# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Amy E. Hanninen, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 3:08CV46(MRK) |
| | : | |
| Linn Fedoravitch, et al., | : | |
| | : | |
| Defendants. | : | |

## RULING AND ORDER

In this action, Plaintiff Amy E. Hanninen sues approximately sixteen defendants for their alleged involvement in an investment scam that defrauded her now-deceased elderly uncle, Urho E. Hanninen, out of approximately $700,000 between January 2004 and June 2004. In accordance with a court order entered by the circuit court for Palm Beach County, Florida, Ms. Hanninen brings this action as Assignee of all rights, claims, and causes of action that the estate and trust of Urho Hanninen may have had with respect to the allegedly fraudulent scheme. *See* First Amended Verified Complaint in Civil Action [doc. # 64] at 90 ("Order Regarding Assignment of Causes of Action"). Despite the complexity of her lawsuit, Ms. Hanninen has thus far proceeded *pro se* in this matter. She has earnestly sought to address what she deems to be a national epidemic of fraud and elder abuse, and has consistently conducted herself in a respectful, courteous, and effective manner throughout the course of this litigation.

Ms. Hanninen seeks damages from two groups of Defendants: (1) the "non-Bank Defendants," who most likely proceeded under "fictitious names, aliases, false identities and/or sham corporations, companies, business entities or persons created to commit the fraud" against her uncle; and (2) the "Bank Defendants," which allegedly enabled the fraudulent transactions involving her

uncle by accepting, processing, or paying out a host of fraudulently induced checks. *See* Am. Compl. [doc. # 64]. The non-Bank Defendants have yet to be identified, located, or served in this action. *See* Order [doc. # 22] (granting Ms. Hanninen until November 12, 2008 to serve the non-Bank Defendants). The Bank Defendants include Ohio Savings Banks n/k/a AmTrust Bank ("AmTrust Bank"), Nationsbank, N.A.,[1] Bank of America, Wachovia Bank, N.A., and Washington Mutual. Ms. Hanninen's Amended Complaint also included Community Bank of Florida and Intercontinental Bank, but both banks have since been voluntarily dismissed from the case and terminated as Defendants. *See* Order Dismissing Case as to Defendant Intercontinental Bank [doc. #87]; Order granting Motion for Voluntary Dismissal [doc. # 90]. Ms. Hanninen asserts a number of claims against the remaining Bank Defendants, including, but not limited to, common law negligence, breach of contract, conversion, theft, and violations of the Uniform Commercial Code and Florida Commercial Code. *See* Am. Compl. [doc. # 64].

Currently pending before the Court are the Bank Defendants' motions to dismiss and/or motions to transfer venue. Specifically, AmTrust Bank moves for dismissal under Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the *Federal Rules of Civil Procedure*, arguing that this Court lacks personal jurisdiction over AmTrust Bank, that Connecticut is an improper venue, and that Ms. Hanninen's commercial code and negligence claims fail to state a claim upon which relief can be granted. *See*

---

[1] In its answer, Bank of America states that "Nationsbank, N.A. is now known as Bank of America, N.A.." Answer of Defendants Bank of America, N.A. and Nationsbank, N.A. [doc. # 36] at 1. Ms. Hanninen asserts that Bank of America is "responsible and liable for any harm or injury caused by Defendant Nationsbank, N.A." as alleged in the Amended Complaint. *See* Am. Compl. [doc. # 64] at 13, ¶ 23.

Renewed Motion to Dismiss of Defendant Ohio Savings Banks n/k/a AmTrust Bank [doc. # 82].[2] Alternatively, AmTrust moves to transfer this case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice." *See id.* Washington Mutual and Bank of America jointly move to transfer this case to the Southern District of Florida under Section 1404(a). *See* Motion for Change of Venue [doc. # 53]. Lastly, Wachovia Bank moves to dismiss this action under Rules 12(b)(1) and 12(b)(6) of the *Federal Rules of Civil Procedure*, arguing that the Court lacks subject matter jurisdiction and that Ms. Hanninen has failed to state a claim upon which relief can be granted. *See* Defendant Wachovia Bank's Motion to Dismiss Amended Complaint [doc. # 72].

For the reasons stated below, the Court GRANTS AmTrust Bank's Renewed Motion to Dismiss [doc. # 82] insofar as it seeks to transfer this case to the United States District Court for the Southern District of Florida, and DENIES the motion on all other grounds without prejudice to renewal in the Southern District of Florida. The Court GRANTS Washington Mutual and Bank of America's Motion for Change of Venue [doc. # 53] and transfers this case to the Southern District of Florida. Finally, the Court DENIES Wachovia Bank's Motion to Dismiss [doc. # 72] insofar as it argues that the Court lacks subject matter jurisdiction, and DENIES the motion on all other grounds without prejudice to renewal of the motions in the Southern District of Florida.

---

[2] Because Ms. Hanninen submitted an "Affidavit in Opposition" with attached exhibits, AmTrust requested that the Court provide notice should the Court decide to convert AmTrust's motion to dismiss into a motion for summary judgment. *See* AmTrust Bank's Reply to Plaintiff's Affidavit in Opposition to Motions to Dismiss/For Venue Change [doc. # 93] at 1 n.1. In response, the Court notes that it continues to treat all of the Bank Defendants' requests as motions to dismiss and/or motions to transfer venue and has not converted them to motions for summary judgment.

## I.

As a threshold matter, the Court first addresses Wachovia Bank's argument that the Court lacks subject matter jurisdiction. As the Plaintiff, Ms. Hanninen has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Morrison v. National Australia Bank Ltd.*, No. 07-0583-cv, 2008 WL 4660742, at *2 (2d Cir. Oct. 23, 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff . . . but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *See Morrison*, 2008 WL 4660742, at *2 (citations and quotation marks omitted). "The Court is not confined to the four corners of the Complaint, however, and may consider evidence outside the pleadings such as affidavits and other documents." *Boston Post Road Medical Imaging, P.C. v. Allstate Ins. Co.*, No. 03 Civ. 6150, 2004 WL 830154, at *1 (S.D.N.Y. Apr. 13, 2004); *see also Morrison*, 2008 WL 4660742, at *2; *Makarova*, 201 F.3d at 113.

## A.

Under 28 U.S.C. § 1331, the Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Wachovia Bank contends that the Court lacks federal question jurisdiction because Ms. Hanninen's federal claim under the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1961 *et seq.*, is insubstantial. *See* Mot. Dismiss [doc. # 72] at 2-3. However, the Court need not decide whether the RICO claim is insubstantial because that claim is no longer at issue in this case. At Ms. Hanninen's request, the Court permitted her to withdraw her federal and state RICO claims against the Bank Defendants.

*See* Order [doc. # 91].

Although Ms. Hanninen voluntarily dropped all of her RICO claims against the Bank Defendants, she continues to pursue federal RICO claims against approximately eight non-Bank Defendants. *See* Plaintiff's Affidavit in Opposition to Motions to Dismiss/For Venue Change [doc. # 88] at 6, ¶ 18 ("The non-bank Defendants, if they can be served, should not escape RICO liability as the statutes are clearly directed against such criminals and this kind of criminal activity."). Ms. Hanninen's RICO claims against the non-Bank Defendants certainly fall within the Court's federal question jurisdiction, and the Court might then be able to exercise supplemental jurisdiction over the Bank Defendants under 28 U.S.C. § 1367. Nevertheless, the Court is hesitant to do so, since it seems quite likely, as Ms. Hanninen herself has candidly acknowledged, that she will be unable to pursue her federal RICO claims against the non-Bank Defendants because of her inability to identify, locate, and serve the non-Bank Defendants. *See* 28 U.S.C. § 1367(c)(2) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.").

Ms. Hanninen's Amended Complaint also asserts that the remaining Bank Defendants have violated the USA Patriot and Bank Secrecy Acts, each of which might provide a source of federal question jurisdiction. *See* Am. Compl. [doc. # 64] at 58-59, ¶¶ 181-186; Pl.'s Aff. Opp'n [doc. # 88] at 13 ("[U]nder the federal Bank Secrecy Act and the amendments known as the Patriot Act, 31 U.S.C. 5311-5341(e), banks are supposed to have compliance programs and monitor accounts for unusual activity."). However, as the Bank Defendants point out, Ms. Hanninen's inclusion of these claims as Counts Twenty-One and Twenty-Two of her Amended Complaint go beyond the Court's Order that allowed her to amend her complaint to address the jurisdictional defects that the Bank

Defendants' raised in their original motions to dismiss and/or motions to transfer venue. *See* Order [doc. # 52]; Defendant Wachovia Bank's Memorandum of Law in Support of Motion to Dismiss Amended Complaint [doc. # 72] at 3 n.2; Reply [doc. # 93] at 5 n.3.

Even if the Bank Defendants' had not objected to Ms. Hanninen's claims under the USA Patriot and Bank Secrecy Acts, the Court would dismiss these claims *sua sponte* because neither of these statutes appears to authorize a private right of action. *See* 31 U.S.C. § 5318 (setting forth legal mechanisms to ensure compliance with federal reporting requirements); *James v. Heritage Valley Fed. Credit Union*, No. 05-4903, 2006 WL 2583041, at *3 (3d Cir. Sept. 8, 2006) ("[Plaintiff's] claim under the Bank Secrecy Act, 31 U.S.C. § 5318, does not authorize a private cause of action against a financial institution or its employees."), *cert. denied*, 75 U.S.L.W. 3608 (U.S. May 14, 2007) (No. 06-9824); *Aiken v. Interglobal Mergers and Acquisitions*, No. 05 Civ. 5503, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) ("Defendant contends, and Plaintiff concedes . . . that neither the Bank Secrecy Act nor the Patriot Act affords a private right of action. This Court may not announce a duty of care where the [state] courts have declined to do so; nor may this Court impose a duty of care based upon a statute that does not permit a private right of action."). Thus, Ms. Hanninen cannot base subject matter jurisdiction against the Bank Defendants on federal question jurisdiction.

## B.

Nonetheless, the Court believes that it currently has diversity jurisdiction over Ms. Hanninen's action. *See* 28 U.S.C. § 1332(a)(1) ("the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."); *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 190 (2d Cir. 1999) (remanding case to district court to determine

whether it had diversity jurisdiction over the plaintiff's remaining claims after his federal claim against another defendant was affirmed as time-barred). As the Second Circuit has made clear, where "jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

Wachovia Bank asserts that the Court lacks complete diversity between the parties because Ms. Hanninen – a citizen of Connecticut – should be considered a citizen of Florida for purposes of this action. *See* Mot. Dismiss [doc. # 72] at 3 n.3. In particular, Wachovia Bank argues that although Ms. Hanninen purports to sue as the "Assignee of the estate and trust of Urho E. Hanninen," she must, in reality, be suing in a representative capacity on behalf of the estate and trust because neither an estate nor a trust is an entity that can sue independently or be sued under governing law. *See id.* (citing supporting cases and governing statutes). As a consequence, Wachovia Bank contends that Ms. Hanninen should properly be considered the legal representative of the estate and trust, thus making her a citizen of Florida (the undisputed state of citizenship of her now-deceased uncle) for purposes of diversity jurisdiction. "[W]here a plaintiff brings suit solely in his representative capacity, the citizenship of the represented party, and not that of the representative, controls." *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003); 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."). Since there are Florida Defendants in the case, there is not, says Wachovia Bank, complete diversity.

However, the Second Circuit has stated that "[t]o establish whether a plaintiff is a 'real and substantial party to the controversy,' a crucial distinction must be made between a plaintiff who sues

solely in his capacity as an agent, on the one hand, and, on the other a plaintiff who sues . . . as an individual who has his own stake in the litigation." *Oscar Gruss & Son, Inc.*, 337 F.3d at 194. Ms. Hanninen responds that she is, in fact, a bona fide assignee of any claims that her uncle's estate and trust have with respect to this matter and that she is suing as the assignee, and therefore owner, of those claims and not as the representative of an estate or trust. *See* Pl.'s Aff. Opp'n [doc. # 88] at 5, ¶¶ 14-16. Thus, "the effectiveness of the Assignment is indeed in issue. If the Assignment is effective to vest in plaintiff all right, title and interest in and to the [claims of Urho Hanninen's estate and trust concerning the alleged fraud], plaintiff establishes diversity of citizenship since she would be entitled to prosecute this action in her individual capacity as a citizen of [Connecticut]." *Snyder v. Pleasant Valley Finish Co.*, 756 F. Supp. 725, 728 (S.D.N.Y. 1990).

Under 28 U.S.C. § 1359, a "district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." An assignment made for the purpose of manufacturing diversity thus cannot provide subject matter jurisdiction. *See O'Brien v. Avco Corp.*, 425 F.2d 1030 (2d Cir. 1969). As the Second Circuit has stated, "[i]n determining whether the parties have improperly manufactured federal jurisdiction, the essential inquiry is whether there is a *bona fide* controversy between . . . citizens of different states." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 125 (quotation marks omitted), *cert. denied*, 72 U.S.L.W. 3328 (U.S. Nov 10, 2003) (No. 03-189). Moreover, "[o]nce diversity jurisdiction is questioned, the party asserting the existence of such jurisdiction has the burden of proving the assignment was not collusive by demonstrating that the reason for the assignment was legitimate and not pretextual." *See Dearjess Medical Imaging PD v. Allstate Ins. Co.*, No. 03 Civ. 3920, 2004 WL 1632596, at *2 (S.D.N.Y. July 22, 2004); *see* 14 Charles A. Wright

et al., Federal Practice and Procedure: Jurisdiction 3d § 3639, at 120-21 ("An action based on an assigned claim will be barred under Section 1359 if the court determines that the assignee possess no real personal interest in the outcome of the litigation so that the transfer of the claim is a sham. . . . [W]hen a substantial interest is retained, and little more than the control over the litigation is transferred, the assignment is only colorable, not real, particularly when the motivation for the assignment seems to be the desire to create diversity of citizenship jurisdiction.").

In assessing whether an assignment was improperly made to manufacture diversity jurisdiction, the Second Circuit examines a number of factors, including the timing and purpose of the assignment, the assignee's previous connection to the claim assigned, whether the assignor retained a primary interest in the claims or primary control over the litigation, and whether there was meaningful consideration for the assignment. *See Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 860, 863 (2d Cir. 1995). In addition, where a party "suffer[s] a pecuniary loss and is entitled to a portion of the damages award . . . [it] is not 'a mere conduit' but possesses a valid stake in the litigation sufficient to be considered a 'real and substantial' party for diversity purposes." *Oscar Gruss & Son, Inc.*, 337 F.3d at 194 (quoting *Airlines Reporting Corp.*, 58 F.3d at 862).

In *Airlines Reporting Corp.*, the Second Circuit applied these factors to conclude that the plaintiff, a non-profit corporation that "function[ed] as a clearinghouse and collection agent for transactions between . . . air carrier[s] and travel agents," had entered into an assignment for the purpose of manufacturing diversity jurisdiction. 58 F.3d at 859. In that case, the plaintiff brought suit in federal court on behalf of twenty-nine air carriers that were owed money for tickets issued by the defendants. *Id.* at 859-60. After the plaintiff filed its complaint, the defendants moved to dismiss the case for want of subject matter jurisdiction, arguing that the citizenship of the twenty-

nine air carriers was determinative for the purpose of diversity jurisdiction. *Id.* In response to the motion to dismiss, the plaintiff obtained assignments from almost all of the air carriers. *Id.* Although the assignments purported to transfer all rights and claims from the air carriers to the plaintiff, the plaintiff conceded that any money it recovered in the lawsuit, less litigation costs, would be paid out to the individual air carriers. *Id.* In those circumstances, the Second Circuit concluded that the plaintiff was "a mere conduit for a remedy owing to others, advancing no specific interests of its own" and that Section 1359 bars "any agreement whose 'primary aim' is to concoct federal diversity jurisdiction." *Id.* at 862 (quoting *O'Brien*, 425 F.2d at 1034).

By contrast, in this case, the assignment to Ms. Hanninen transfers all rights, claims, and causes of action that the estate and trust of Urho Hanninen may have had with respect to the allegedly fraudulent scheme. *See* Am. Compl. [doc. # 64] at 90-93. Dora Hanninen, the assignor, is the sister of Ms. Hanninen and also the Personal Representative, Trustee, and Beneficiary of the estate and trust. Ms. Hanninen alleges that the assignment was made in good faith and pursuant to a state court order that allowed her to pursue any claims that were related to the alleged fraud and elder abuse of her uncle. *See* Am. Compl. [doc. # 64] at 9, 90-93; Pl.'s Aff. Opp'n [doc. # 88] at 5, ¶¶ 14-16. Here, Ms. Hanninen's previous connection with the claim assigned as co-beneficiary of Urho Hanninen's estate and trust and niece of Urho Hanninen does not operate to undermine her claim as assignee. *See Mehmet v. Thompson*, No. 05 Civ. 7739, 2007 WL 2728742, at *3 (S.D.N.Y. Sept. 13, 2007).

In addition, Ms. Hanninen is entitled to any recovery for herself rather than having to share the recovery with the estate or the assignor, Dora Hanninen. *Cf. Kades v. Organic Inc.*, No. 00Civ.671, 2003 WL 470331, at *6 (S.D.N.Y. Feb. 24, 2003) ("[Plaintiff] has sued in his individual

capacity and as assignee 'on behalf' of Miller and the Stone Company, thus indicating that he is not the sole intended beneficiary of any recovery in respect of the assigned claims."). Moreover, unlike the assignors in *Airlines Reporting Corp.*, Dora Hanninen does not have any ongoing financial interest in, or control over, this litigation. Quite the contrary, Ms. Hanninen alleges that Dora Hanninen "absolutely did not want for her or the Estate or Trust to become involved with the expense, burden or responsibilities of any investigation or litigation." *See* Pl.'s Aff. Opp'n [doc. # 88] at 5, ¶ 15. Thus, this factor also fails to suggest impropriety or collusion in violation of 28 U.S.C. § 1359.

A lack of any meaningful consideration for the assignment could suggest collusion. Here, Ms. Hanninen paid only ten dollars for the assignment. *See* Am. Compl. [doc. # 64] at 91; *Mehmet*, 2007 WL 2728742, at *3; *Kades*, 2003 WL 470331, at *5 (suggesting collusion when the assignee pays no money for the assignment). However, Ms. Hanninen also states that the assignment was made "in consideration of [her] incurring the costs, and risks" of litigation because the assignor, her sister, was fearful of pursuing costly claims against unknown perpetrators. *See* Pl.'s Aff. Opp'n [doc. # 88] at 5, ¶ 15. Thus, the Court does not believe that the nominal sum that Ms. Hanninen paid to her family member is controlling in determining whether the assignment was made to manufacture diversity jurisdiction.

As to the last factor, the underlying purpose of the assignment, Ms. Hanninen "wanted these issues investigated and pursued; [and her sister] refused." *See id.* As co-beneficiary of Urho Hanninen's Estate and Trust, Ms. Hanninen would incur a monetary loss from the failure of his estate's representative to sue. Additionally, Ms. Hanninen's submissions to the Court make clear that she seeks to vindicate the fraud and abuse allegedly perpetrated against her elderly, now-deceased

uncle Urho.  Although Ms. Hanninen concedes that the assignment was made in order to enable her to file a lawsuit before the statute of limitations for her various causes of action expired, *see id.* at 5, ¶ 16, the above factors do not indicate that this assignment was improperly entered into to manufacture diversity jurisdiction, in violation of 28 U.S.C. § 1359.  *See* Am. Compl. [doc. # 64] at 9, ¶ 11.

Because, at the time this action was commenced, Ms. Hanninen, an assignee and a citizen of Connecticut, was completely diverse from the Bank Defendants, none of which are citizens of Connecticut,  the Court has subject matter jurisdiction over this case.  But the Bank Defendants are not the only ones named in the Amended Complaint.  Ms. Hanninen also names non-Bank Defendants, none of whom have been located or served at this point.  Although the Court and parties can only speculate as to the identity and citizenship of the non-Bank Defendants, Ms. Hanninen has represented to the Court that she would withdraw her claims against the non-Bank Defendants and proceed only against the Bank Defendants should the unknown citizenship of any of the non-Bank Defendants destroy complete diversity.  *See* Pl.'s Aff. Opp'n [doc. # 88] at 22-23, ¶ 85.  If it turns out that the non-Bank Defendants are non-diverse parties, Ms. Hanninen may still be able to invoke diversity jurisdiction so long as they are dispensable parties that Ms. Hanninen either drops from her suit or the district court dismisses under Rule 21 of the *Federal Rules of Civil Procedure*.  *See LeBlanc v. Cleveland*, 248 F.3d 95, 98 (2d Cir. 2001) (allowing dispensable, non-diverse party to be dropped in order to allow plaintiff to assert diversity jurisdiction that relates back to the filing of the complaint); s*ee also* 13B Charles A. Wright et al., Federal Practice and Procedure:  Jurisdiction 3d § 3605, at 400-401 (addressing use of Rule 21).

The Court does not believe it is necessary for Ms. Hanninen to withdraw her claims against

the non-Bank Defendants at this time, especially since the Bank Defendants have not provided the Court with any information to suggest that any of the non-Bank Defendants are citizens of Connecticut. However, if Ms. Hanninen does identify, locate, and serve the non-Bank Defendants and any of them are Connecticut citizens for purposes of diversity jurisdiction, the Defendants may renew their motions if Ms. Hanninen does not withdraw her claims against any non-diverse Defendants. *See* 14 Charles A. Wright et al., Federal Practice and Procedure: Jurisdiction 3d § 3642, at 205-206 (discussing dismissal of John Doe defendants). The District Court for the Southern District of Florida will be in a position to determine whether it retains subject matter jurisdiction over this case based on the constellation of claims and parties as they then exist. Furthermore, if Wachovia Bank should during discovery learn of information that would show that the assignment to Ms. Hanninen was made to manufacture diversity jurisdiction, Wachovia Bank will be able to renew its motion to dismiss.

## II.

The Court next turns to the Bank Defendants' motions to transfer venue. If this Court adopts Ms. Hanninen's position and assumes *arguendo* that AmTrust is subject to personal jurisdiction under Connecticut's long-arm statute and that venue is proper under 28 U.S.C. § 1391, *see* Pl.'s Aff. Opp'n [doc. # 88] at 16-22, this Court is still left with the Bank Defendants' arguments that the United States District Court for the Southern District of Florida is the more appropriate forum for this action.

Section 1404(a) enables a district court to transfer any civil action to another district where the action may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) gives district courts "considerable discretion . . . to

adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Factors to consider in whether to transfer venue under Section 1404(a) include "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Jones v. Walgreen, Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006)). This Court and other district courts have identified two additional factors to consider when determining a motion to transfer: "(1) the forum's familiarity with the governing law; and (2) trial efficiency and the interest of justice, based on the totality of the circumstances." *Jones*, 463 F. Supp. at 271 (citations and quotation marks omitted). The burden of justifying a transfer of venue under Section 1404(a) is on the movant. *See D.H. Blair & Co.*, 462 F.3d at 106. The Bank Defendants raise several grounds that, they argue, support a motion to transfer venue to the Southern District of Florida. The Court agrees with the Bank Defendants.

**Plaintiff's Choice of Forum**

The Court gives great weight to the first factor, the plaintiff's choice of forum, for it is well-settled that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Jones*, 463 F. Supp. 2d at 271 (quoting *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950)). "As the Second Circuit has put it, '[t]he interest of justice favors retention of jurisdiction in the forum chosen by an aggrieved party where, as here, Congress has

given [her] a choice.'" *Jones*, 463 F. Supp. 2d at 274 (quoting *Newsweek, Inc. v. U.S. Postal Serv.*, 652 F.2d 239, 243 (2d Cir. 1981)).  Here, Ms. Hanninen has chosen Connecticut as the forum.  And while it appears that there is no connection between this case and the State of Connecticut aside from her residence, Ms. Hanninen's choice of forum is given "significant, though not controlling, weight." *Jones*, 463 F. Supp. 2d at 274.  Thus, the Bank Defendants must show by "clear and convincing evidence that other factors strongly favor trial in an alternative forum." *Kodak Polychrome Graphics, LLC v. Southwest Precision Printers, Inc.*, No. 3:05-CV-330 (MRK), 2005 WL 2491571, at *2 (D. Conn. Oct. 7, 2005).

**Convenience of Witnesses**

The convenience of the witnesses is generally considered the most important factor in determining whether a venue transfer is appropriate. *See In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 395 (S.D.N.Y. 2006).  "In order to show that this factor favors transfer, the moving party must identify the witnesses located in the transferee district upon whom it intends to rely and describe the content of their potential testimony . . . . Vague generalizations and failure to clearly specify the key witnesses to be called . . . are an insufficient basis upon which to grant a change of venue under § 1404(a).'" *See id.* (citations and quotation marks omitted); *Jones*, 463 F. Supp. 2d at 274-75.  Although the parties have yet to embark on discovery and identify the specific witnesses on which they intend to rely, Ms. Hanninen's claim is premised on a theory of elder fraud and abuse, and as AmTrust contends, "[w]itnesses as to the alleged diminished cognitive capacity of Mr. Hanninen, his relationship with [non-bank Defendant] Ms. Fedoravitch, and the banking transactions in question will all be located in Florida, where Mr. Hanninen resided and where this alleged fraudulent scam took place, witnesses not subject to compulsory process if this case proceeds

15

in Connecticut."  Reply [doc. # 93] at 5.

Ms. Hanninen responds that because her claims question the Bank Defendants' elder fraud and abuse prevention programs, their compliance with suspicious activity reporting requirements, and their internal procedures for recognizing "red flags," witnesses are "not necessarily in Florida at all, but in corporate offices, in the check-processing centers, and at other locations not yet disclosed by Defendant banks."  Pl.'s Aff. Opp'n [doc. # 88] at 22.  However, even if this is so, there is a greater likelihood that non-party witnesses who can testify as to the condition of Urho Hanninen's health in 2004 and the non-Bank Defendants' fraudulent conduct, their endorsement of checks, and their subsequent disappearance upon the involvement of Florida police authorities will be based in Florida.  Conversely, there is nothing to indicate that any non-party witness will hail from Connecticut.  That said, the Bank Defendants have not made any showing that it is in the interest of any *identified* non-party witnesses to proceed in Florida.  In fairness to the Bank Defendants, however, the Court notes that merits discovery has been stayed in this case, and that, as a result, they simply may not yet be able to identify any witnesses.  *See* Orders [docs. # 52, 85].  As a result, the Court notes that although this factor might otherwise receive great weight, it tilts the analysis only slightly in the Bank Defendants' favor.

**Location of Relevant Documents**

This factor, the location of relevant documents and relative ease of access to sources of proof, also favors the Bank Defendants.  Although Ms. Hanninen aptly notes that much of the information that she seeks concerning the Bank Defendants' internal policies and elder fraud abuse prevention programs is likely available from their corporate headquarters and check-processing centers, *see* Pl.'s Aff. Opp'n [doc. # 88] at 22, additional transaction-specific information and all information

regarding Intercontinental Bank and Community Bank of Florida's ultimate disbursement of the funds to the non-Bank Defendants will be located in Florida. Also, additional documents of interest to the Bank Defendants pertaining to Urho Hanninen's mental and physical condition during the time of the alleged scam will be located in Florida. More importantly, none of the relevant documents are located in Connecticut.

**Convenience of Parties**

Unlike the previous factor, the convenience of the parties slightly favors Ms. Hanninen, who is a resident of Connecticut. Although the remaining Bank Defendants are doing business in Florida, none of them are incorporated in or have a principal place of business in Florida. Rather, AmTrust is based in Ohio, Bank of America and Wachovia Bank are based in North Carolina, and Washington Mutual is based in Washington. However, it is unlikely that proceeding in Connecticut rather than Florida would significantly impact either of the parties, as both Ms. Hanninen and the Bank Defendants would need to travel to Florida or elsewhere to complete depositions of non-party witnesses. In addition, as Ms. Hanninen herself admits, "the distances between parties present little difficulty in an era of electronic filings and modern communication." Pl.'s Aff. Opp'n [doc. # 88] at 22. However, the Court realizes that should this matter necessitate in-court appearances or proceed to trial, then Ms. Hanninen will incur additional expense and inconvenience in having to litigate this case in Florida rather than in Connecticut. Thus, the Court concludes that this factor slightly favors Ms. Hanninen.

**Locus of Operative Facts**

The locus of operative facts weighs heavily in favor of the Bank Defendants because all of the facts giving rise to Ms. Hanninen's claim occurred in Florida. For example, Urho Hanninen was

residing in Florida during the course of the allegedly fraudulent scheme, all of his interactions with the non-Bank Defendants occurred in Florida, each of the sixteen checks in question that Ms. Hanninen argues should have acted as "red flags" for the Bank Defendants were "drawn on accounts with Defendants banks . . . in his name or in the name of the Urho E. Hanninen Trust, dated 10/11/89 and made in Palm Beach County and the State of Florida," *see* Am. Compl. [doc. # 64] at 6, ¶ 3, and all funds were ultimately accessible to the non-Bank Defendants via their bank accounts with Intercontinental Bank and Community Bank of Florida, *see id.* at 7, ¶¶ 5-6. In fact, all of the exhibits supporting Ms. Hanninen's Amended Complaint are checks drawn on Florida accounts. *See id.* Ex. 1. In addition, Ms. Hanninen became assignee to these claims by virtue of a court order entered in Palm Beach County, Florida. *See id.* at 90-93. Lastly, the local criminal investigation of the scam and fraud against Urho E. Hanninen was based in Florida. *See id.* at 8, ¶ 8.

**Availability of Process to Compel the Attendance of Unwilling Witnesses**

As to the issue of the availability of process to compel the attendance of unwilling witnesses, this Court may lack authority to compel the participation and attendance of Florida-based, non-party witnesses. Under Rule 45 of the *Federal Rules of Civil Procedure*, this Court may compel the appearance of witnesses and exercise its contempt power only if the party can be served with a subpoena within the district of the court or within 100 miles of the place specified for the deposition, hearing, or trial. *See* Fed. R. Civ. P. 45(b)(2), (e). However, as already noted, the Bank Defendants have not provided the specific names of any non-party witnesses that reside in the transferee district, and so the Court does not know the extent to which its lack of authority would prejudice them.

However, and perhaps more importantly, AmTrust argues – persuasively – that former Defendants Intercontinental Bank and Community Bank of Florida may be necessary parties to this

action, and that maintaining this action in the District of Connecticut may prevent the remaining Bank Defendants from impleading Intercontinental Bank or Community Bank of Florida as third-party defendants because these two banks may not be subject to personal jurisdiction in the District of Connecticut. *See* Reply [doc. # 93] at 5-6; *see also* Memorandum of Law in Support of Defendant Intercontinental Bank's Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, to Change Venue [doc. # 27-2] at 4-7 (arguing that the Court lacks personal jurisdiction over Intercontinental Bank); Memorandum of Defendant Community Bank of Florida, Inc. in Support of Motion to Dismiss and/or to Transfer Venue [doc. # 61] at 5 (arguing same for Community Bank of Florida). The inability to implead these two banks, both of which are the likely source of much relevant information because they paid out monies to the non-Bank Defendants that held accounts with them, counsels against this Court retaining jurisdiction. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 479 (2d Cir. 2002) (in *forum non conveniens* case, concluding that the inability to join certain parties was a relevant factor in dismissing the action); *see also Republic of Colombia v. Diageo North America Inc.*, 531 F. Supp. 2d 365, 409 (E.D.N.Y. 2007) ("Had Defendants identified specific third-parties that they wish to implead, this would weigh heavily in favor of dismissal under the doctrine of *forum non conveniens*.").

**Relative Means of the Parties**

Although the Court does not have any financial information before it, it understands Ms. Hanninen's concern that transferring the case to Florida may increase her litigation expenses. However, it is unclear that many of those expenses other than Ms. Hanninen's need to be present in Florida for in-court appearances or a potential trial, would be avoided by litigating this case in Connecticut. Where, as here, the Court has already taken Ms. Hanninen's position into account in

the factor that addresses the convenience of the parties, the Court will not treat this factor as weighing in favor of either party.

**Forum's Familiarity with the Governing Law**

The parties agree that substantial portions of this case are governed by Florida law. Ms. Hanninen's action against the remaining Bank Defendants includes claims of common law negligence, breach of contract, conversion, theft, and violations of the Uniform Commercial Code and Florida Commercial Code. *See* Am. Compl. [doc. # 64] at 2-5, 39-59. Defendants AmTrust Bank and Wachovia Bank have already attacked Ms. Hanninen's common law negligence claim as pre-empted by the Florida Uniform Commercial Code. *See* Memorandum in Support of Defendants' AmTrust and Ohio Savings Bank Motion to Dismiss [doc. # 33] at 19-22; Defendant Wachovia Bank's Mem. Law Supp. Mot. Dismiss [doc. 56-2] at 9 n.4. In addition, AmTrust argues that the Florida Adult Protective Services Act does not provide Ms. Hanninen with a private cause of action for negligence. *See* Reply [doc. # 93] at 6. To resolve Ms. Hanninen's tort claims, Connecticut choice of law principles would direct the Court to apply the law of the state of injury so long as it did not produce an irrational result, or to otherwise apply the law of the state with the most substantial relationship to the claim. *See O'Connor v. O'Connor*, 519 A.2d 13, 21-22 (Conn. 1986). Under either test, Florida law would apply. Thus, the additional consideration that this case will likely involve significant issues of Florida law with which the Florida district courts are more familiar than this Court supports a change of venue. *Cf. Kodak Polychrome Graphics, LLC*, 2005 WL 2491571, at *3 (concluding factor weighed against transfer because the case raised "significant issues of Connecticut law").

**Trial Efficiency and the Interest of Justice**

Lastly, there is the consideration of "trial efficiency and the interest of justice, based on the totality of the circumstances." *Jones*, 463 F. Supp. at 271. Although Ms. Hanninen filed this case on January 10, 2008, the Court stayed merits discovery pending Ms. Hanninen's amendment of her complaint and the Bank Defendants' briefing on their jurisdictional challenges. *See* Order [doc. # 85]. In addition, Ms. Hanninen has until November 12, 2008 to identify, locate, and serve the non-Bank Defendants, *see* Order [doc. # 22], the success of which may again change the posture of this case. Thus far, the Court's on-the-record telephone conferences with Ms. Hanninen and the Bank Defendants have addressed only these issues. The Court is not yet familiar with the merits of Ms. Hanninen's legal claims. Moreover, there is no reason to believe that the case will cease to timely proceed once transferred to the Southern District of Florida or that it will be resolved more quickly in Connecticut than in Florida. *Cf. Kodak Polychrome Graphics LLC*, 2005 WL 2491571, at *3.

After reviewing the relevant factors, the Court does not believe that any one factor clearly weighs in favor of the Court retaining jurisdiction over Ms. Hanninen's case. Although the Court recognizes the importance of Ms. Hanninen's choice of Connecticut as the forum and is sympathetic to her desire to pursue her claims where she lives, this factor has less significance where Connecticut has absolutely no connection to the events, witnesses, and documents in this case. *See In re Collins & Aikman Corp Sec. Litig.*, 438 F. Supp. 2d at 398 ("[Plaintiff's choice is entitled to less deference in the present action [because] . . . the operative facts in this litigation bear little, if any, connection to the Southern District of New York, a circumstance that diminishes the deference accorded to plaintiff's choice."). Further, transfer is all the more appropriate because of the likelihood that the remaining Bank Defendants will be unable to implead the only two payee banks, both of which are

local Florida banks, because of this Court's potential lack of personal jurisdiction. Moreover, all of the remaining claims against the Bank Defendants are governed by the law of Florida, which is where most of the critical events underlying this controversy occurred. The Court is therefore satisfied that the Bank Defendants have made a clear and convincing showing that transfer should be made to the United States District Court for the Southern District of Florida. The Bank Defendants' motions to transfer venue are thus GRANTED.

### III.

For the foregoing reasons, Defendant Ohio Savings Bank n/k/a AmTrust Bank's Renewed Motion to Dismiss [doc. # 82] is GRANTED insofar as it seeks an order from this Court transferring the case to the Southern District of Florida and is DENIED on all other grounds without prejudice to renewal in the Southern District of Florida. Defendants Washington Mutual Bank and Bank of America's Motion for Change of Venue [doc. # 53] is GRANTED. Defendant Wachovia Bank, N.A.'s Motion to Dismiss Amended Complaint [doc. # 72] pursuant to Rule 12(b)(1) is DENIED without prejudice to renewal should the facts of this case later indicate that the assignment to Ms. Hanninen was made to manufacture diversity jurisdiction and is further DENIED on all other ground without prejudice to renewal in the Southern District of Florida. **The Clerk is directed to transfer this case to the United States District Court for the Southern District of Florida.**

IT IS SO ORDERED,


/s/ _____Mark R. Kravitz_____
          Mark R. Kravitz
          United States District Judge

Dated in New Haven, Connecticut: **October 27, 2008**.